**Thomas P. Smith, Jr.**
**Sheldon L. Pollock**
**Gerald Gross**
**Victor Suthammanont**
**James K. Hanson**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**100 Pearl Street, Suite 20-100**
**New York, New York 10004-2616**
**(212) 336-5674 (Suthammanont)**
**Email: SuthammanontV@sec.gov**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>                                  Plaintiff,<br><br>          -- against --<br><br>**MONEY MAGNET PLATINUM MEMBERSHIP INITIATIVE LLC and LAKENYA HOPKINS,**<br><br>                                  Defendants. | 22 Civ. 7640 ( )<br><br>ECF Case<br><br>**COMPLAINT**<br>**AND JURY DEMAND** |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against Defendants Money Magnet Platinum Membership Initiative LLC ("MMPMI") and LaKenya Hopkins ("Hopkins" and together with MMPMI, "Defendants") alleges as follows:

## SUMMARY OF THE ALLEGATIONS

1.      Between approximately October 2020 and March 2021, Hopkins and her company, MMPMI, solicited more than 100 prospective investors to make investments into MMPMI. Hopkins initially targeted investors in New York City, who introduced her to investors from around the United States.

2. On videoconferences in which she pitched these investors, Defendants offered promissory notes of $1,000 each—what Defendants called "magnets."

3. Among other false statements, Defendants promised those investors that each $1,000 invested in a "magnet" would result in $8,000 guaranteed monthly returns for that investor. But Defendants also knew, or were reckless or negligent in not knowing, that these statements were false because they had not performed any due diligence into the legitimacy of the contemplated investments they would make on behalf of their investors. Defendants knew, or recklessly or negligently disregarded, that promised outsized returns by the contemplated investment vehicle (5% guaranteed returns compounded daily) were unlikely or impossible to achieve, which is a significant indicia of fraud. Defendants ignored this risk and other indicia of fraud in the contemplated investment vehicle.

4. Further, Defendants failed to disclose material risks of the contemplated investments—including sending money to an offshore money manager without performing reasonable due diligence into the legitimacy of the money manager.

5. In addition to these materially false and misleading statements, Hopkins made materially false statements concerning the use of investor funds and misappropriated more than $180,000 of investor funds to pay rent on a luxury Manhattan apartment and to purchase clothes, jewelry, and furniture for herself.

## **VIOLATIONS**

6. By engaging in the conduct set forth in this Complaint, Defendants committed securities fraud in violation of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

7. Unless Defendants are permanently restrained and enjoined, they will continue to engage in the acts, practices, and courses of business set forth in this Complaint, and in acts, practices, and courses of business of similar type and object.

## NATURE OF THE PROCEEDING AND RELIEF SOUGHT

8. The Commission brings this action pursuant to the authority conferred upon it by Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Sections 21(d)(1) and (d)(5) of the Exchange Act [15 U.S.C. §§ 78u(d)(1) and (d)(5)] seeking a final judgment: (a) permanently restraining and enjoining Defendants from engaging in the acts, practices, and courses of business alleged herein; (b) ordering the Defendants to disgorge with prejudgment interest all ill-gotten gains from the conduct alleged in this Complaint pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)], and Sections 6501(a)(1) and (a)(3) of the National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, to be codified at 15 U.S.C. §§ 78u(d)(3) and 78u(d)(7); and (c) imposing civil money penalties on Defendants pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa]. Defendants, directly or indirectly, made use of the means or instruments of transportation or communication in, and the means or instrumentalities of, interstate commerce, or of the mails, in connection with the transactions, acts, practices, and courses of business alleged herein.

10. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Among other things, Defendants, from within the district, solicited investors and offered and sold securities to investors. MMPMI listed its principal office in Manhattan, and Hopkins used investor funds to prepay rent on a luxury apartment in Manhattan.

## DEFENDANTS

11. **MMPMI**, is a Delaware limited liability corporation established in October 2020 with its principal place of business in New York, New York. It is solely controlled by Hopkins.

12. **Hopkins**, age 45, is a resident of New York, New York, and was the principal of MMPMI. Hopkins claims to have a doctorate in business administration and worked in human resources for various employers for over twenty years.

## FACTS

A. **Defendants' Fraudulent Offering**

13. Beginning in or about October 2020, Hopkins solicited at least 100 investors to her company, MMPMI, offering promissory notes of $1,000 each, which she called "magnets."

14. Hopkins initially targeted investors in New York City and surrounding area. Those investors introduced Hopkins to other investors from other parts of the country.

15. Between approximately September 2020 and March 2021, Hopkins and MMPMI solicited investors during videoconferences during which Hopkins promised investors that, for every $1,000 invested via the magnets, MMPMI would generate guaranteed returns of $8,000 per month.

16. On at least one call with investors, Hopkins compared the "magnets" to shares in a company.

17. In a PowerPoint presentation shown to investors during the videoconferences, Hopkins and MMPMI promised that, in exchange for an initial $1,000 investment, plus an annual $150 "Membership Fee," each investor would receive "a minimum monthly income of $5,000" to be made available via a debit card to be provided to the investors and that, in addition, $1,000 would be automatically re-invested to generate the following month's guaranteed return.

18. Further, in a "MMPMI Membership Promissory Note" that each investor had to sign in order to invest into MMPMI, Defendants stated that MMPMI would invest into a fund paying 5% interest per day, compounding weekly, resulting in $8,000 monthly returns to investors.

19. The Promissory Notes also represented that, of the $8,000 monthly returns, $5,000 would be "available as liquid[,]" $2,000 per month would be "used for the placement into external financial vehicles[,]" and $1,000 would be remain invested "to jumpstart future earnings."

20. The returns promised by Defendants represented an annualized return on investment of over 750%.

21. Hopkins and MMPMI stated that the returns to investors would be generated by "a peer-to-peer investment platform that rivals the cooperative economics system" and that "external investment vehicles will include but are not limited to: High interest yield savings accounts, Smart Contracts, Crypto Currencies, FOREX market, the Stock Market, & Real Estate[.]"

22. In the presentation to investors during the videoconferences, Defendants presented a slide listing frequently asked questions, including: "How can you guarantee the $5k per month?" Defendants' written answer to that question was: "As a group we are investing into a fund that guarantees us 3-5% per day. That will allow us the wiggle room needed to guarantee the $8k per month, which is available to you as a $5k per month liquid."

23. Ultimately, at least 100 investors invested between $1,000 and $10,000 each with Defendants, totaling approximately $277,000.

24. Hopkins and MMPMI knew, or were reckless or negligent in not knowing that their representations concerning the proceeds to be generated by the investments were false and misleading because Hopkins based the representations on a contemplated investment with a purported offshore investment manager ("Manager"), without performing reasonable due diligence as to the basis for the Manager's promised returns, the assets or investment strategy of the Manager, the offshore Manager's asset custody and return policies, and the risks of investments with the offshore Manager.

25. In fact, the Manager did not specifically list its assets under management, investment strategy, investment plans and objectives, past performance or results, or its asset custody and return policies on its website

26. Further, Hopkins and MMPMI knew, or were reckless or negligent in not knowing, that their representations concerning the proceeds to be generated by the investments were false and misleading because such outsize returns (5% compounded daily and more than 750% annually) are rarely achievable, much less—if ever—with no risk (i.e., "guaranteed"), and such promises are a well-known indicia of illicit and fraudulent schemes. Defendants ignored this and additional indicators of potential fraud: the Manager was an obscure offshore entity

soliciting the public through a bare-bones website and required investments be made by means of crypto-asset deposits, effectively anonymizing the recipient of the funds.

27. Defendants did not inform their investors of material risks presented by sending funds to the Manager without undertaking such due diligence, including the risk that the Manager itself may be a scam (given the outsized returns promised by the Manager and other factors alleged above), that assets were being sent outside the United States, that the Manager did not specifically list its investment plans, objectives, past performance or results, or that the Manager's asset custody and return policies were not stated on its website.

28. Defendants knew or were reckless or negligent in not knowing that these omissions were material and should have been disclosed to their investors.

29. In fact, these risks came to pass with respect to Defendants. Hopkins transferred approximately $27,000 of investor funds to the Manger through crypto-asset intermediaries.

30. The Manager did not pay Defendants the promised returns.

31. When Defendants attempted to withdraw their funds, the Manager stonewalled them, leaving Defendants unable to repay their investors, much less provide the "guaranteed" returns Defendants promised them.

### B.    Hopkins Misappropriated Investor Funds

32. Hopkins also made materially false statements concerning the use of investor funds, including those alleged in paragraphs 18-19 and 21-22 above, and misappropriated the majority of investor funds, rendering her unable to refund their investments when they demanded a return of their funds in light of Defendants' broken promises.

33. Defendants knew, or were reckless or negligent in not knowing, that the statements concerning the use of investor funds were false and misleading because Hopkins

spent investor money on personal expenses contemporaneously with raising them and obtained more investor funds after using investor funds on personal expenses.

34. For example, Hopkins spent at least $85,000 of investors' funds to prepay rent on a luxury Manhattan apartment in November 2020.

35. In addition, Hopkins spent thousands of dollars of investor funds on personal expenses, including indulging in expensive restaurant meals and purchasing personal items such as clothing, jewelry, and furniture. In total, including the rental payment, Hopkins misappropriated at least $180,000 of investor funds.

36. Other than the $150 annual "membership fee," Defendants never disclosed that investor funds would be used for any purpose other than funding investments MMPMI would make on investors' behalf.

## FIRST CLAIM FOR RELIEF
### Violations of Section 17(a) of the Securities Act

37. The Commission repeats, realleges, and incorporates by reference paragraphs 1 through 36, as though fully set forth herein.

38. Defendants, by engaging in the conduct described above, directly or indirectly, in the offer or sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails:

   a. Knowingly or recklessly employed devices, schemes, or artifices to defraud;

   b. Knowingly, recklessly or negligently obtained money or property by means of untrue statements of material fact or omissions to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

      c. Knowingly, recklessly, or negligently engaged in transactions, practices or courses of business which operated or would operate as a fraud or deceit upon the purchasers of securities.

39. By virtue of the foregoing, Defendants violated, and unless restrained and enjoined will continue to violate, Sections 17(a) of the Securities Act [15 U.S.C. §§ 77q(a)].

## SECOND CLAIM FOR RELIEF
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5

40. The Commission repeats, realleges, and incorporates by reference paragraphs 1 through 36, as though fully set forth herein.

41. By virtue of the foregoing, Defendant, directly or indirectly, by the use of the means and instrumentalities of interstate commerce or of the mails, in connection with the purchase or sale of securities, knowingly or recklessly:

      a. employed devices, schemes, or artifices to defraud;

      b. Defendant made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

      c. and engaged in acts, practices, and courses of business which operate or would operate as a fraud or deceit.

42. By virtue of the foregoing, Defendant violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. § 240.10b-5] promulgated thereunder.

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court grant the following relief:

**I.**

A Final Judgment permanently restraining and enjoining Defendants, their agents, servants, employees and attorneys and other persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise from violating Section 17(a) of the Securities Act [15 U.S.C. §§ 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

**II.**

A Final Judgment directing the Defendant to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

**III.**

A Final Judgment ordering the Defendant to disgorge with prejudgment interest all ill-gotten gains from the conduct alleged in this Complaint pursuant to Section 21(d)(5) of the Exchange Act, 15 U.S.C. § 78u(d)(5), and Sections 6501(a)(1) and (a)(3) of the National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, to be codified at 15 U.S.C. §§ 78u(d)(3) and (d)(7); and

**IV.**

Such other and further relief as this Court deems appropriate and necessary for the benefit of investors.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands that this case be tried to a jury.

| | |
|---|---|
| Dated: New York, New York<br>September 8, 2022 | SECURITIES AND EXCHANGE COMMISSION<br><br>By:  /s/ Thomas P. Smith, Jr.<br>    Thomas P. Smith, Jr.<br>    Sheldon L. Pollock<br>    Gerald Gross<br>    Victor Suthammanont<br>    James K. Hanson<br>    100 Pearl Street, Suite 20-100<br>    New York, New York 10004-2616<br>    (212) 336-5674 (Suthammanont)<br>    Email: SuthammanontV@sec.gov<br><br>    Attorneys for Plaintiff |